## No. 24-2928

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

---

U.S. NEWS & WORLD REPORT, L.P.,

*Plaintiff-Appellant,*

v.

DAVID CHIU,

in his Official Capacity as City Attorney of the City and County of San Francisco,

*Defendant-Appellee.*

---

*Appeal from the United States District Court for the Northern District of California,*
*The Honorable William Horsley Orrick, District Judge, No. 3:24-cv-00395-WHO*

## BRIEF OF *AMICUS CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

JOSHUA A. HOUSE*
**FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION**
700 Pennsylvania Avenue, SE
Suite 340
Washington, DC 20003
Telephone: (215) 717-3473
joshua.house@thefire.org

*\*Counsel of Record*

*Attorneys for* Amicus Curiae *Foundation for Individual Rights and Expression*

 

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTEREST OF *AMICUS CURIAE* ........................................................ 1

SUMMARY OF ARGUMENT .................................................................. 2

BACKGROUND ...................................................................................... 4

ARGUMENT ............................................................................................ 7

I.    San Francisco's City Attorney, When Acting in His Official Capacity, Does Not Have a Right of Petition or Free Speech. ................................................................. 8

II.    The Anti-SLAPP Statute Does Not Protect Government Investigatory Subpoenas. ...................................................... 14

      A.    California courts have warned against extending anti-SLAPP protections to the official acts of government. .......................................... 15

      B.    Letting the government recover attorney's fees in civil-rights cases will chill the very rights the anti-SLAPP statute was intended to protect. ................................................................. 20

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**  **Page(s)**

*Allied Premier Ins. v. United Fin. Cas. Co.,*
991 F.3d 1070 (9th Cir. 2021) ...................................................... 25

*Baral v. Schnitt,*
376 P.3d 604 (Cal. 2016) ................................................................ 5

*Barnette v. W. Va. State Bd. of Educ.,*
47 F. Supp. 251 (S.D.W.V. 1942) ................................................. 23

*Bassi v. Bassi,*
321 Cal. Rptr. 3d 1 (Ct. App. 2024) .............................................. 6

*Bonni v. St. Joseph Health Sys.,*
491 P.3d 1058 (Cal. 2021) .............................................................. 5

*Boren v. Gadwa,*
No. 50604-2023 (Idaho, filed Sept. 29, 2023) ............................. 18

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ................................................................ 21, 24

*Cox v. Mariposa County,*
445 F. Supp. 3d 804 (E.D. Cal. 2020) .......................................... 17

*Demers v. Austin,*
746 F.3d 402 (9th Cir. 2014) ........................................................ 12

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.
Bd. of Educ.,*
82 F.4th 664 (9th Cir. 2023) ......................................................... 22

*Flores v. Bennett,*
635 F. Supp. 3d 1020 (E.D. Cal. 2022), *aff'd*, No. 22-16762,
2023 WL 4946605 (9th Cir. 2023) ................................................ 22

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ........................................................ 11, 12, 13

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera,*
104 Cal. Rptr. 3d 692 (Ct. App. 2010) .......................................... 18

*Hasso v. City of San Diego,*
2021 WL 4226142 (S.D. Cal. 2021) ......................................... 16, 17

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010) .......................................................... 5

*Hughes v. Rowe,*
    449 U.S. 5 (1980) ................................................................... 20, 21

*In re Hairopoulos,*
    118 F.3d 1240 (8th Cir. 1997) ........................................................ 9

*Kearney v. Foley & Lardner, LLP,*
    566 F.3d 826 (9th Cir. 2009), *opinion amended and superseded
    on denial of reh'g,* 590 F.3d 638 (9th Cir. 2009) .......................... 6, 7

*Koopman v. Water Dist. No. 1,*
    41 F.3d 1417 (10th Cir. 1994) ...................................................... 23

*Lindke v. Freed,*
    601 U.S. 187 (2024) ................................................................... 11

*Lowry v. Watson Chapel Sch. Dist.,*
    540 F.3d 752 (8th Cir. 2008) ........................................................ 22

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) ................................................................... 12

*Matal v. Tam,*
    582 U.S. 218 (2017) ................................................................... 10

*McCutcheon v. FEC,*
    572 U.S. 185 (2014) ........................................................... 3, 9, 10

*Minersville School District v. Gobitis,*
    310 U.S. 586 (1940) .............................................................. 23, 24

*N.R.A. v. Vullo,*
    602 U.S. 175 (2024) ................................................................... 11

*NetChoice v. Bonta,*
    692 F. Supp 3d 924 (N.D. Cal. 2023), *appeal pending,*
    No. 23-2969 (9th Cir.)................................................................. 1

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland,*
    269 Cal. Rptr. 3d 170 (Ct. App. 2020)............................................ 25

*Pacaso Inc. v. City of St. Helena,*
    2021 WL 2987144-WHO (N.D. Cal. Jul. 15, 2021) ....................... 14

*Pacheco v. United States*,
21 F.4th 1183 (9th Cir. 2022) ............................................... 25

*Park v. Bd. of Trs. of the Cal. State Univ.*,
393 P.3d 905 (Cal. 2017) ............................ 6, 7, 16, 17, 19

*Park v. Nazari*,
311 Cal. Rptr. 3d 557 (Ct. App. 2023) .................................. 5

*San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Ass'n.*,
22 Cal. Rptr. 3d 724 (Ct. App. 2004) ............................. 16, 18

*Shahbazian v. City of Rancho Palos Verdes*,
225 Cal. Rptr. 3d 772 (Ct. App. 2017) ........................... 15, 16

*Shaw v. Burke*,
No. 2:17–CV–02386–ODW, 2018 WL 459661
(C.D. Cal. Jan. 17, 2018) ..................................................... 22

*Singer v. United States*,
380 U.S. 24 (1965) ................................................................. 9

*Smith v. Davis*,
927 F.3d 313 (5th Cir. 2019) ......................................... 10, 12

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) ............................................................... 9

*Tinker v. Des Moines Ind. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) ............................................................. 22

*United States v. Acevedo-Hernández*,
898 F.3d 150 (1st Cir. 2018) ................................................. 9

*United States v. Alvarez*,
567 U.S. 709 (2012) ............................................................. 10

*United States v. Cardinal Mine Supply, Inc.*,
916 F.2d 1087 (6th Cir. 1990) .............................................. 9

*United States v. Reyes*,
8 F.3d 1379 (9th Cir. 1993) .................................................. 9

*Vargas v. City of Salinas*,
205 P.3d 207 (Cal. 2009) ............................................... 7, 13

*Volokh v. James*,
656 F. Supp. 3d 431 (S.D.N.Y. 2023), *appeal pending*,
No. 23-0356 (2d Cir.) ............................................................ 1

*W. Va. Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ................................................ 10, 23, 24

*West v. Atkins*,
487 U.S. 42 (1988) ............................................................ 11

*Wooley v. Maynard*,
430 U.S. 705 (1977) .......................................................... 10

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ............................................... 6

**STATUTES**

Cal. Bus. & Prof. Code § 16759 .............................................. 13

Cal. Code Civ. P. § 425.16 ................................... 5, 6, 7, 15, 18

Cal. Gov't Code § 11180 ....................................................... 13

Cal. Gov't Code § 11181 ....................................................... 13

Cal. Gov't Code § 11187 ....................................................... 13

**OTHER AUTHORITIES**

123 Am. Jur. Proof of Facts 3d § 1 (June 2024) .......................... 6

*FIRE defends Idaho conservation officer sued for criticizing
wealthy ranch owner's airstrip permit*, FIRE (Oct. 2, 2023),
https://www.thefire.org/news/new-fire-defends-idaho-
conservation-officer-sued-criticizing-wealthy-ranch-owners-
airstrip ............................................................................ 2

FIRE, *Demand to Disavow Threatened Defamation Suit Over
Samson Cournane's Patient-Safety Advocacy* (Aug. 23, 2023),
https://www.thefire.org/sites/default/files/2023/08/Samson%2
0Cournane%20Demand%20Letter%202023-08-
23%20%281%29.pdf ....................................................... 19

Letter from George W. Pring, Professor of Law, to Pete Wilson,
Governor of Cal. (Sept. 14, 1992) (on file with author) .................. 8

*Maine hospital threatens defamation lawsuit over 15-year-old's Change.org petition*, FIRE (Aug. 23, 2023), https://www.thefire.org/news/maine-hospital-threatens-defamation-lawsuit-over-15-year-olds-changeorg-petition .............2

S. Rep. 94-1011, 5, 1976 U.S.C.C.A.N. 5908...........................................20

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended individual rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. *See, e.g.*, *NetChoice v. Bonta*, 692 F. Supp. 3d 924 (N.D. Cal. 2023), *appeal pending*, No. 23-2969 (9th Cir.); *Volokh v. James*, 656 F. Supp. 3d 431, 437–38 (S.D.N.Y. 2023), *appeal pending*, No. 23-0356 (2d Cir.); Br. FIRE Supp. Pet'rs in No. 22-555 & Resp'ts in No. 22-277, *Moody v. Netchoice*, Nos. 22-277 & 22-555, ___ U.S. ___ (July 1, 2024).

FIRE has a strong interest in preventing government officials from abusing anti-SLAPP laws to silence critics. It has defended speakers from strategic lawsuits against public participation across the country, from

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

Idaho to Maine.[2] Given the important protection anti-SLAPP statutes provide private speakers, *amicus* FIRE opposes their abuse by government officials.

## SUMMARY OF ARGUMENT

U.S. News & World Report filed a civil-rights lawsuit against the San Francisco City Attorney in his official capacity, alleging he led the City in retaliating against U.S. News for its hospital rankings. Yet the district court not only dismissed this case, it also ruled that the lawsuit, brought after the City issued investigatory subpoenas, was a strategic lawsuit against public participation (SLAPP)—intended to stifle the City Attorney's exercise of petition or free-speech rights. The court thus awarded attorney's fees to San Francisco under California's anti-SLAPP statute.

But no California court has ever held that issuing investigatory subpoenas—a routine task for many officials—furthers any government

---

[2] *FIRE defends Idaho conservation officer sued for criticizing wealthy ranch owner's airstrip permit*, FIRE (Oct. 2, 2023), https://www.thefire.org/news/new-fire-defends-idaho-conservation-officer-sued-criticizing-wealthy-ranch-owners-airstrip; *Maine hospital threatens defamation lawsuit over 15-year-old's Change.org petition*, FIRE (Aug. 23, 2023), https://www.thefire.org/news/maine-hospital-threatens-defamation-lawsuit-over-15-year-olds-changeorg-petition.

official's right to speech or petition. Before so expanding state law, federal courts should pause and reflect.

Below are two points for reflection: First, and as a matter of first principles, the government and its officials do not have First Amendment rights when performing official functions. And second, without clear guidance from California's courts or legislature, there are good reasons not to give government officials novel versions of those rights.

As to the first, it is a principle so obvious that few cases discuss it directly. "The First Amendment does not protect the government . . . ." *McCutcheon v. FEC*, 572 U.S. 185, 206 (2014) (plurality op. of Roberts, C.J.). Governments do not have rights, they have powers. It is private individuals and groups who have rights. And they often seek to protect those rights against government intrusion. U.S. News & World Report did so here.

As to the second point, even if officials did exercise constitutional rights when performing some duties, government investigatory subpoenas do not further the rights of petition or speech. Recent California precedent demands that courts distinguish a government's enforcement action from any official's speech about that action. These

cases caution against holding that official actions further expressive "rights" under the anti-SLAPP statute, when in fact such actions merely carry out official powers and duties. There is good reason to exercise such caution: Letting government officials use anti-SLAPP motions will in fact chill the rights of people seeking to criticize, or assert their rights against, those same government officials. That would contradict the entire point of California's anti-SLAPP law, which was to ensure the legal system was not abused to silence speakers and deter public participation.

For those reasons, the district court's grant of Defendant-Appellee's anti-SLAPP motion should be reversed.

## BACKGROUND

Below, U.S. News & World Report sued the San Francisco City Attorney, alleging that the City Attorney's issuance of investigatory subpoenas against U.S. News violated the First Amendment and the California Constitution. 5-ER-990, -1024–30. The complaint alleged that the City Attorney issued the subpoenas in retaliation for U.S. News's ranking of San Francisco hospitals. 5-ER-990. It further alleged that the City Attorney intended the subpoenas "to chill and penalize a disfavored viewpoint." 5-ER-1023–24. The City Attorney responded by filing both a

motion to dismiss and an anti-SLAPP motion to strike U.S. News's state claims. 1-ER-2.

The district court granted both motions after finding U.S. News's claims unripe, and it awarded attorney's fees and costs to the City under the California anti-SLAPP statute. 1-ER-2–3, -35. U.S. News appealed and filed its opening brief on July 3, 2024. (9th Cir. Dkt. Entry 13.1.)

California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16(a), was enacted to prevent "strategic lawsuits against public participation," *i.e.*, the use of costly, prolonged litigation to silence speakers. "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id.* Defendants can bring an anti-SLAPP motion against either an entire complaint or specific allegations. *Park v. Nazari*, 311 Cal. Rptr. 3d 557, 563 (Ct. App. 2023) (citing *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1067 (Cal. 2021), and *Baral v. Schnitt*, 376 P.3d 604, 615 (Cal. 2016)). Although an anti-SLAPP motion does not lie against federal claims, it can be brought against state claims in federal court. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

The statute demands a two-step analysis of each claim:

*First*, defendants "must make an initial prima facie showing" that the plaintiffs' claim "arises from an act in furtherance of defendant's right of petition or free speech." *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007). "The only means specified" in the statute to meet this step is by showing that plaintiffs' claim arises from the four categories of speech or petition acts listed in subsection (e). *Park v. Bd. of Trs. of the Cal. State Univ.*, 393 P.3d 905, 908 (Cal. 2017). Those categories are writings or statements

> (1) 'before a[ny] . . . official proceeding authorized by law,' (2) 'in connection with an issue under consideration or review by . . . any other official proceeding authorized by law,' (3) 'in a place open to the public or a public forum in connection with an issue of public interest,' or (4) 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'

*Bassi v. Bassi*, 321 Cal. Rptr. 3d 1, 12 (Ct. App. 2024) (quoting § 425.16(e)).

*Second*, if the movant satisfies the first step, the court must then ask whether plaintiffs have shown their claim has "a probability of prevailing." 123 Am. Jur. Proof of Facts 3d § 1 (June 2024); *see also Kearney v. Foley & Lardner, LLP*, 566 F.3d 826, 836–37 (9th Cir. 2009),

*opinion amended and superseded on denial of reh'g*, 590 F.3d 638 (9th Cir. 2009). If plaintiff's lawsuit does *not* have "a probability of prevailing," the court must strike the complaint, or relevant portions of it, and, in most cases, award defendant "attorney's fees and costs." Cal. Code Civ. P. § 425.16(c).

Of relevance here, government entities and officials may bring anti-SLAPP motions, but only if their statements giving rise to the lawsuit would have been protected had a private individual spoken or written them. *Vargas v. City of Salinas*, 205 P.3d 207, 216 (Cal. 2009). Of course, the anti-SLAPP statute does not protect—and thus does not permit fee shifting—for *all* the statements of government officials. *Park*, 393 P.3d at 907. The issue here is whether the anti-SLAPP protections extend to government investigatory subpoenas.

## ARGUMENT

When the government issues investigatory subpoenas, it is not engaging in speech protected by the First Amendment or the California anti-SLAPP law. Governments have powers, not rights. That means that government officials—when acting as officials—do not have rights to petition or speech.

7

Moreover, protecting government officials from press scrutiny is the *opposite* of what the anti-SLAPP law was designed to protect. As the author of the most significant study used to craft California's anti-SLAPP statute wrote, some of the worst SLAPP offenders are local government attorneys: SLAPP "[f]ilers are most often local real estate developers, small companies, and local government employees (police, teachers, attorneys, etc.), acting in defense of their own economic or occupational interests." Letter from George W. Pring, Professor of Law, to Pete Wilson, Governor of Cal. (Sept. 14, 1992) (on file with author).

This should give pause to any court seeking to extend anti-SLAPP protections to the exercise of government powers. Allowing the government to claim that its investigatory or enforcement powers are protected speech will chill individuals' recourse to the judicial system to fight against unjust exercises of such powers—turning the anti-SLAPP statute on its head.

## I. San Francisco's City Attorney, When Acting in His Official Capacity, Does Not Have a Right of Petition or Free Speech.

"The First Amendment does not protect the government, even when the government purports to act through legislation reflecting 'collective

speech.'" *McCutcheon*, 572 U.S. at 206. That's because the government exercises power, not rights. In fact, it is very often government power against which rights are asserted: "The whole point of the First Amendment is to afford *individuals* protection against such infringements." *Id.* (emphasis added).

The First Amendment is not unique. The Bill of Rights generally does not protect the government. Government does not have a "right" to due process. *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966).[3] The Sixth Amendment does not give "the Government . . . the constitutional right to insist on a jury trial." *United States v. Reyes*, 8 F.3d 1379, 1390 (9th Cir. 1993) (citing *Singer v. United States*, 380 U.S. 24, 36–37 (1965)). And "the government does not have a constitutional right to cross-examine defense witnesses." *United States v. Acevedo-Hernández*, 898 F.3d 150, 170 (1st Cir. 2018). Accordingly, the Ninth Amendment speaks of the "rights" of the people, while the Tenth Amendment refers to the "powers" of the federal and state governments.

---

[3] *See also United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 (6th Cir. 1990) ("the United States appropriately concedes that it has no right to due process"); *In re Hairopoulos*, 118 F.3d 1240, 1244 n.3 (8th Cir. 1997) ("the government does not have a constitutional right to due process").

Hence, while the government may have the power to enforce the law, it "does not have 'constitutional rights'" when doing so. *Smith v. Davis*, 927 F.3d 313, 320 (5th Cir. 2019).

The "government speech" doctrine, despite its name, does not imply the government has a *right* to speech. It maintains merely that "[t]he Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about" matters of government. *Matal v. Tam*, 582 U.S. 218, 234 (2017). But that the government may take a point of view when it speaks—as it sometimes must—does not mean it is exercising a *right* to speak. "The First Amendment does not protect the government, *even when the government purports to act through legislation reflecting 'collective speech.'*" *McCutcheon*, 572 U.S. at 206 (emphasis added).

In *McCutcheon*, the plurality cites no fewer than three landmark First Amendment cases to show the government does not have a standalone right to speak "justify[ing] restrictions on individual speech." *Id.* at 205–06 (citing *United States v. Alvarez*, 567 U.S. 709 (2012); *Wooley v. Maynard*, 430 U.S. 705 (1977); *W. Va. Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943). And even so-called government speech may not override

10

individuals' First Amendment rights. *See N.R.A. v. Vullo*, 602 U.S. 175, 194–95, 197 (2024) (rejecting lower-court finding that government officials' threats against First Amendment rights were "permissible government speech").

Not only do government entities not have First Amendment rights to petition or speak, government actors, when acting in their official capacities, likewise do not exercise First Amendment rights when speaking. A citizen "who works for the government" undoubtedly has a constitutionally protected right to speak as a citizen "about matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). But when speaking "pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 421. This was recently re-affirmed by the Supreme Court in *Lindke v. Freed*, where it held that a city manager's social media use could be an exercise of his First Amendment rights, but only if "act[ing] in his private capacity." 601 U.S. 187, 196–97 (2024). The relevant question is whether officials are conducting government business.[4] If officials "make statements pursuant

---

[4] *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 50 (1988) ("a public employee acts under color of state law while acting in his official capacity or while

to their official duties, [they] are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421.[5]

Here, "[n]o one contests that the City Attorney issued the Subpoenas in furtherance of his official responsibilities." 1-ER-30. The fact that City Attorney had the statutorily (or even constitutionally) authorized *power* to subpoena certain records does not mean he had the constitutional *right* to do so. *See Smith*, 927 F.3d at 320. (holding government "does not have 'constitutional rights'" when enforcing the law). Powers are not rights. It would fly in the face of *Garcetti* to suggest that government attorneys have a First Amendment *right* to say whatever they want—free from legal retribution—when they are representing the government in official proceedings.

---

exercising his responsibilities pursuant to state law"); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935–37 (1982) (asking whether officials are acting "under color of state law" and their actions are "fairly attributable to the state").

[5] Though not relevant here, there is one exception to *Garcetti*, which has been recognized by every Court of Appeals to have considered the issue (and to which *Garcetti* itself alludes): Academic speech is protected even if it is spoken as part of an academic's official duties. *See, e.g.*, *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) ("We conclude that *Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing . . . .").

True, the California Supreme Court has held officials may bring anti-SLAPP motions—but only if their statements would have been protected had a private individual spoken or written them. *Vargas*, 205 P.3d at 216. Could a private individual have issued the investigatory subpoenas at issue here? No.

The statute authorizing the San Francisco City Attorney to issue investigatory subpoenas is titled "powers of district attorney" and it sets forth just those. Cal. Bus. & Prof. Code § 16759. And the procedure governing those subpoenas and their enforcement refers to the issuer as the "head of [a] department," who is empowered to "make investigations and prosecute actions." Cal. Gov't Code §§ 11180–81, 11187. Investigations and prosecutions are "official duties" under *Garcetti*— indeed *Garcetti* concerned precisely the First Amendment claim of a California "district attorney." 547 U.S. at 413. Investigations and prosecutions are powers granted to government officials; they are not the sort of things private citizens have a constitutional right to do. The anti-SLAPP statute thus does not protect those official acts. And, as the next section will show, courts have good reason not to extend anti-SLAPP protections so far.

13

## II.  The Anti-SLAPP Statute Does Not Protect Government Investigatory Subpoenas.

Even if the Constitution protected the City Attorney in his official capacity—which it doesn't—courts should still refrain from holding the anti-SLAPP statute protects the issuance of investigatory subpoenas. California courts have provided no guidance on the question, and the district court did not cite any state cases concerning investigatory subpoenas.[6] Besdies the lack of precedent, there are two very good reasons not to extend anti-SLAPP protection to investigatory subpoenas.

First, the anti-SLAPP statute protects the rights of speech and petition. It does not protect government decisions to which the speech or petitions are related. California courts have warned that extending anti-SLAPP protections to government decisions does not protect constitutional rights; it only protects governments from challenges to those decisions.

---

[6] The case it *did* cite does not appear to concern subpoenas at all, but rather letters from a city attorney. 1-ER-31 ("As I held in another case, subpoenas issued by city attorneys in connection with official investigations can fall within the ambit of anti-SLAPP protections. *See Pacaso Inc. v. City of St. Helena*, 2021 WL 2987144-WHO (N.D. Cal. Jul. 15, 2021) (recognizing that a letter sent by a city attorney during investigations into a company for suspected violations of zoning ordinances was protected under the anti-SLAPP statute).").

Second, permitting the government to recover attorney's fees under the anti-SLAPP statute turns the anti-SLAPP statute on its head. The point of the anti-SLAPP statute was to reduce the cost of litigation to individuals whose First Amendment rights have been jeopardized. Awarding fees to the government in civil-rights suits will chill individuals from bringing suit at all. It creates a weapon for the government to wield *against* those who exercise their free speech rights.

### A. California courts have warned against extending anti-SLAPP protections to the official acts of government.

This district court held that government subpoenas are categorically protected by the anti-SLAPP statute, because they are "written statements made in connection with an 'official proceeding authorized by law.'" 1-ER-31 (quoting Cal. Code Civ. P. § 425.16(e)(2)). But that conclusion is mistaken. Recent California decisions have warned against holding that all statements connected to official proceedings are protected.

When it comes to official proceedings, courts must carefully distinguish whether the lawsuit arose from an official's speech or from a challenged, allegedly illegal government action. *See, e.g., Shahbazian v.*

*City of Rancho Palos Verdes*, 225 Cal. Rptr. 3d 772, 778 (Ct. App. 2017) (discussing cases). There is a "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." *Park*, 393 P.3d at 909. In *Park*, for instance, the California Supreme Court held a discrimination claim did not arise from speech, but rather from a government employment decision: Merely because a public entity or official speaks in making the challenged decision does not mean it is the *speech* that gives rise to the challenge. *Id.*

*Park* approvingly cited *San Ramon Valley Fire Protection District v. Contra Costa County Employees' Retirement Ass'n.*, which held "[a]cts of governance mandated by law, without more, are not exercises of free speech or petition." 22 Cal. Rptr. 3d 724, 732 (Ct. App. 2004). Neither that a government action "may be carried out by means of speech" nor that the government's motives may be "evidenced by speech . . . transforms a . . . suit to one arising from speech." *Park*, 393 P.3d at 911.

Federal courts have likewise distinguished whether lawsuits arise from speech or instead from a challenged government *action*. In *Hasso v. City of San Diego*, the district court held that a negligence claim against

a city for the design of a park memorial did not arise from speech, even if "statements attributed to [the City] may constitute evidence in support of the negligence claim." 2021 WL 4226142, at *5 (S.D. Cal. 2021). And in *Cox v. Mariposa County*, the district court rejected the county's argument that its investigation and code-enforcement actions against the plaintiff were protected activities. 445 F. Supp. 3d 804, 821 (E.D. Cal. 2020).

This distinction between speech about a government decision and the government's decision itself is critical to protecting First Amendment rights under California's anti-SLAPP scheme. If individuals challenging government decisions can be rebuffed by anti-SLAPP motions—and threatened with ruinous attorney's fees—it will in fact chill those individuals' own rights to petition.

"Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power." *Park*, 393 P.3d at 911 (quotation marks omitted). "[I]f a special motion to strike could be brought in every case where a petition for mandate seeks to challenge a government decision,

17

then suits to compel public entities to comply with the law would be chilled." *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 104 Cal. Rptr. 3d 692, 700 (Ct. App. 2010) (citing *San Ramon Fire*, 22 Cal. Rptr. 3d at 724).

*Amicus* FIRE knows firsthand the importance of anti-SLAPP laws and what they were intended to protect. The California Legislature intended to protect "the valid exercise of the constitutional rights of freedom of speech and petition." Cal. Code Civ. P. § 425.16(a). It therefore intended to "encourage continued participation in matters of public significance" and not let "this participation . . . be chilled through abuse of the judicial process." *Id.* That's exactly how FIRE has utilized anti-SLAPP mechanisms in other contexts.

In Idaho, FIRE represents Gary Gadwa, who spoke out against development of an airstrip in a national recreation area. Joint Br. Defs.-Resps., *Boren v. Gadwa*, No. 50604-2023, at 1 (Idaho, filed Sept. 29, 2023). The owner of the land then sued Gadwa for civil conspiracy and defamation. *Id.* That lawsuit threatened Gadwa's First Amendment right to criticize the proposed airstrip, so he filed an anti-SLAPP motion. *Id.* at 1, 3.

Or consider the case of FIRE client Samson Cournane, a 15-year-old student at the University of Maine, who started a Change.org petition and advocated on behalf of improved hospital patient-safety standards. A regional medical center then threatened Cournane with a defamation suit, to which Cournane responded with a threat to file an anti-SLAPP motion. FIRE, *Demand to Disavow Threatened Defamation Suit Over Samson Cournane's Patient-Safety Advocacy* (Aug. 23, 2023), https://www.thefire.org/sites/default/files/2023/08/Samson%20Cournane%20Demand%20Letter%202023-08-23%20%281%29.pdf. These are classic SLAPP cases. And when First Amendment rights are threatened, the anti-SLAPP mechanism serves as a bulwark against meritless litigation.

But "none of th[ose] core purposes the Legislature sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them." *Park*, 393 P.3d at 914. Indeed, it would be counterproductive, as it would let the government use anti-SLAPP laws to chill both the right to petition that the statute was meant to protect—as well as the underlying

19

constitutional right sought to be vindicated. As the next section shows, this concern is well-founded.

### B. Letting the government recover attorney's fees in civil-rights cases will chill the very rights the anti-SLAPP statute was intended to protect.

Another reason not to extend the anti-SLAPP statute to government's official duties is that the threat of attorney's fees will dissuade individuals from challenging illegal government action. It does so by a straightforward mechanism: granting attorney's fees to a successful anti-SLAPP movant.

Under federal law, of course, government defendants in civil-rights suits cannot typically recover attorney's fees. Defendants can recover attorney's fees "*only*" when the defendants prove that the plaintiff brought a "clearly frivolous, vexatious," or "harass[ing]" suit. S. Rep. 94-1011, 5, 1976 U.S.C.C.A.N. 5908, 5912 (emphasis added); *accord Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (defendants can recover attorney's fees "only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation" (quotation marks omitted)). Without such a high bar, routinely imposing such fees "would substantially add to the risks inhering in most litigation and would

undercut the efforts of Congress to promote the vigorous enforcement" of section 1983. *Hughes*, 449 U.S. at 15.

This wisdom on fee-shifting from federal courts likewise counsels against indiscriminately extending anti-SLAPP protection to government acts. *Amicus* FIRE regularly advocates on behalf of First Amendment plaintiffs and their interests. These plaintiffs would hesitate to file suit if the district court's uncritical award of attorney's fees here went unchecked. As Congress and the Supreme Court have identified, civil-rights plaintiffs "ordinarily cannot afford to" bring a case themselves, *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986), let alone pay for the government's lawyers.

Two classes of people *amicus* frequently represents or advocates for—students and parents—illustrate the point. High school and college students generally have little to no income and attend their institutions for only a fixed duration. The prospect of a large fee award against them—one which they likely could not pay—will deter them from bringing suit in the first place. But, as the large body of First Amendment student speech case law attests, schools and universities regularly act unconstitutionally, and civil-rights litigation is often students' only

avenue to force changes to their schools' unconstitutional policies.[7] Given their limited stay on campus, public-school students may prefer to avoid conflict and allow constitutional violations to go unremedied over fears of incurring tens of thousands of dollars to pay the other side's, the *government's*, attorneys.

What's more, students often challenge unconstitutional school policies that inflict real injury but for which damages are low. *E.g.*, *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 504 (1969) (seeking injunction against school discipline and nominal damages). Free speech and other constitutional injury is often "not readily reducible to a sum of money." *Lowry v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 765 (8th Cir. 2008). But "[d]eterring meritorious lawsuits on constitutional issues because they offer a small likelihood of a significant money judgment

---

[7] *E.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 688 (9th Cir. 2023) (holding school district engaged in viewpoint discrimination, "treating comparable secular activity more favorably than religious exercise"); *cf., e.g.*, *Flores v. Bennett*, 635 F. Supp. 3d 1020, 1048 (E.D. Cal. 2022) (granting preliminary injunction to stop college's content-based ban on student group's flyers), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. 2023); *Shaw v. Burke*, No. 2:17–CV–02386–ODW, 2018 WL 459661, at *6–10 (C.D. Cal. Jan. 17, 2018) (finding college's "Free Speech Areas," as alleged, restricted students' free expression in violation of the First Amendment).

presents as grave a danger to our legal system as frivolous litigation." *Koopman v. Water Dist. No. 1*, 41 F.3d 1417, 1421 (10th Cir. 1994). The district court's decision here sends the message that civil-rights plaintiffs do not have much to gain from challenging unconstitutional policies, but they have a lot to lose. And that will make them all the more hesitant to stand up for civil liberties.

Large potential attorney's fees liability will also discourage parents from suing to vindicate their and their children's rights in education. Parents file suit on behalf of their children because they do not want their children to receive discipline from the school or "be deprived of the benefits of the . . . public school system." *Barnette v. W. Va. State Bd. of Educ.*, 47 F. Supp. 251, 252 (S.D.W.V. 1942), *aff'd sub nom. W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943). They often cannot afford the "great expense" associated with private school. *Id.* Nor could those parents afford the risk of paying five or six figures in attorney's fees.

Routinely awarding government defendants large sums in attorney's fees will also stagnate the law. For example, in *Minersville School District v. Gobitis*, the Supreme Court *upheld* a public-school policy requiring students to salute the flag. 310 U.S. 586, 591 (1940).

West Virginia's board of education then adopted a similar policy, relying on *Gobitis*. *Barnette*, 319 U.S. at 626. Coming just two years after *Gobitis*, the *Barnette* plaintiffs' claims could be seen as futile—if not frivolous. But those who suffered from compelled speech understood that the "very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials." *Id.* at 638. They continued to litigate what they knew to be meritorious claims, which, only three years later, prompted the Court to overrule *Gobitis* and pen one of its most celebrated lines: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Id.* at 642.

The threat of having to pay for the government's attorneys in these cases would have discouraged many from litigating such claims. It would have left their injuries—and the correct interpretation of the First Amendment—unvindicated. Not only those injured, but the whole Nation, would continue to suffer from unremedied constitutional wrongs. *See City of Riverside*, 477 U.S. at 575.

24

Thus, applying the anti-SLAPP to novel areas of law will have immense public policy implications. "Code of Civil Procedure section 425.16 . . . has resulted in numerous appeals that involve various ambiguities and apparent unintended consequences." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 269 Cal. Rptr. 3d 170, 188 (Ct. App. 2020) (quotation marks omitted). Fee-shifting can dramatically change a civil-rights litigant's cost-benefit analysis. Without unambiguous guidance from state law, federal courts should not lightly extend the anti-SLAPP statute to protect the official acts of government.[8]

## CONCLUSION

Government officials issuing investigatory subpoenas do not have rights to speech or petition. The anti-SLAPP statute therefore does not apply. For those and all the foregoing reasons, this Court should reverse the district court order granting the City Attorney's anti-SLAPP motion.

---

[8] To the extent the district court had any doubts about stretching the anti-SLAPP statute—as this brief suggests it should have—it ought to have certified the question. *See, e.g.*, *Pacheco v. United States*, 21 F.4th 1183, 1187 (9th Cir. 2022) ("[C]ertification is appropriate where a case presents 'complex' issues of state law with "significant policy implications."); *Allied Premier Ins. v. United Fin. Cas. Co.*, 991 F.3d 1070, 1076 (9th Cir. 2021) (certifying question where "there is no clearly controlling precedent of the California Supreme Court or the California Courts of Appeal").

Dated: July 9, 2024    /s/ Joshua A. House
_____

Joshua A. House
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
joshua.house@thefire.org

*Counsel of Record*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2928

I am the attorney or self-represented party.

**This brief contains** | 5,048 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Joshua A. House | **Date** | July 9, 2024

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 9, 2024, an electronic copy of the Foundation for Individual Rights and Expression's Brief of *Amicus Curiae* was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: July 9, 2024

/s/ Joshua A. House

Joshua A. House*
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE
Suite 340
Washington, DC 20003
(215) 717-3473
joshua.house@thefire.org

*Counsel of Record*