No. 24-2928

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

U.S. NEWS & WORLD REPORT, L.P.,
*Plaintiff-Appellant,*

v.

DAVID CHIU, in his Official Capacity as City Attorney
of the City and County of San Francisco,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California, No. 3:24-cv-00395-WHO
Hon. William H. Orrick III, United States District Judge

_____

## BRIEF OF *AMICI CURIAE* LOCAL
## GOVERNMENTS IN SUPPORT OF APPELLEE

_____

MARA ELLIOTT, SBN 175466
City Attorney
MARK ANKCORN, SBN 166871
Senior Chief Deputy City Attorney
JULIE RAU, SBN 317658
Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
JRau@sandiego.gov

*Attorneys for Amicus Curiae*
*Office of the San Diego City Attorney*

*Additional Amici Counsel on signature page*

AMICUS BRIEF OF LOCAL GOVERNMENTS,       i
LOCAL GOVERNMENT OFFICIALS, AND LOCAL
GOVERNMENT ORGANIZATIONS
CASE NO. 24-2928

# TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE...................................................................1

SUMMARY OF ARGUMENT ....................................................................3

ARGUMENT ...............................................................................................7

    I.    The Power to Issue Administrative Subpoenas Facilitates
        Responsible and Informed Governmental Decision Making...............7

        A.    Local Governments Rely on the Subpoena Power to
               Protect the Health, Safety, and Welfare of the
               Communities They Serve............................................................7

        B.    Judicial Review of Administrative Subpoenas Is
               Necessary, Limited, and Summary .........................................12

            1.    Subpoena Respondents Are Entitled to Judicial Review
                Before Enforcement…………………………………….13

            2.    Judicial Review of Subpoenas is Generally Limited…..15

        C.    Limited Judicial Review of Subpoenas Advances
               Important Governmental Interests Without Sacrificing
               Individual Liberties ..................................................................16

    II.    This Court Should Affirm Because Premature Federal Court
        Actions Bypass Applicable Legal Frameworks And Undermine
        Subpoena Power .................................................................................21

        A.    Government and the Public Have a Strong Interest in
               Efficiency and Flexibility when Conducting
               Investigations ..........................................................................21

        B.    U.S. News's Premature Action Frustrates Governmental
               Interest.....................................................................................22

CONCLUSION ........................................................................................27

Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6...................29

Form 8. Certificate of Compliance for Briefs.........................................30

CERTIFICATE OF SERVICE ................................................................31

AMICUS BRIEF OF LOCAL GOVERNMENTS,      ii
LOCAL GOVERNMENT OFFICIALS, AND LOCAL
GOVERNMENT ORGANIZATIONS
CASE NO.  24-2928

# TABLE OF AUTHORITIES

## Cases

*Arnett v. Dal Cielo*,
14 Cal. 4th 4 (1996) ..........................................................................11

*Ass'n of Am. Med. Colls. v. United States*,
217 F.3d 770, 782 (9th Cir. 2000) ......................................... 17, 20, 23

*Brovelli v. Superior Ct. of Los Angeles Cnty.*,
56 Cal. 2d 524 (1961) ............................................... 4, 5, 11, 15

*Cal. Rest. Ass'n v. Henning*,
173 Cal. App. 3d 1069 (1985) ........................................ 12, 13, 15, 18

*Carpenter v. United States*,
585 U.S. 296 (2018) .........................................................................10

*Casey v. FTC*,
578 F.2d 793 (9th Cir. 1978) ...........................................................20

*CBA Pharma, Inc. v. Perry*,
No. 22-5358, 2023 WL 129240, at *4 (6th Cir. Jan. 9, 2023)...................... 19, 20

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992) .............................................................................22

*City & Cnty. of San Francisco v. Uber Techs., Inc.*,
248 Cal. Rptr. 3d 273 (Cal. Ct. App. 2019)................................ 15, 16, 17, 19, 20

*City of Los Angeles, Cal. v. Patel*,
576 U.S. 409 (2015) .........................................................................14

*City of Vacaville v. Pitamber*,
124 Cal. App. 4th 739 (2004) ..............................................................9

*Connecticut Indem. Co. v. Superior Ct.*,
23 Cal. 4th 807 (2000) .......................................................................8

*Craib v. Bulmash*,
49 Cal. 3d 475 (1989) ......................................................................11

*Dibb v. Cnty. of San Diego*,
  8 Cal. 4th 1200 (1994) ........................................................................9, 13

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
  124 F.3d 1304 (D.C. Cir. 1997) ...............................................................18

*Donaldson v. United States*,
  400 U.S. 517 (1971) ................................................................................14

*Donovan v. Lone Steer, Inc.*,
  464 U.S. 408 (1984) ................................................................................15

*Fed. Mar. Comm'n v. Port of Seattle*,
  521 F.2d 431 (9th Cir. 1975) ......................................................... 10, 22

*FTC v. Texaco, Inc.*,
  555 F.2d 862 (D.C. Cir. 1977) ................................................................21

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ..................................................................26

*Hannah v. Larche*,
  363 U.S. 420 (1960) ..............................................................................5, 17

*In re EEOC*,
  709 F.2d 392 (5th Cir. 1983) ..................................................................22

*Jerry T. O'Brien, Inc. v. SEC*,
  719 F.2d 300 (9th Cir. 1983) ..................................................................25

*Kirchmeyer v. Helios Psychiatry Inc.*,
  89 Cal. App. 5th 352 (2023) ....................................................................17

*Lewis v. Superior Ct.*,
  3 Cal. 5th 561 (2017) .................................................................................5

*McLane Co. v. EEOC*,
  581 U.S. 72 (2017) ..................................................... 10, 15, 16, 18

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ...................................................................................7

*NLRB v. N. Bay Plumbing, Inc.*,
    102 F.3d 1005 (9th Cir. 1996) ..............................................................18

*Obria Grp. Inc. v. Ferguson*,
    No. 23-6093 (W.D. Wash. filed Nov. 29, 2023) ..................................27

*Oklahoma Press Pub. Co. v. Walling*,
    327 U.S. 186 (1946) .............................................................. 5, 11, 18

*People ex rel. Gallo v. Acuna*,
    14 Cal. 4th 1090 (1997) ......................................................................7

*Portman v. Cnty. of Santa Clara*,
    995 F.2d 898 (9th Cir. 1993)..............................................................24

*SEC v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980)..........................................................22

*SEC v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735 (1984)............................................................ 5, 17, 25

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
    648 F.2d 118 (3d Cir. 1981). .............................................................22

*Second Amend. Found. v. Ferguson*,
    No. 23-1554, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024)..................26

*See v. City of Seattle*,
    387 U.S. 541 (1967) .......................................................... 14, 15, 16

*State Water Res. Control Bd. v. Baldwin & Sons, Inc.*,
    45 Cal. App. 5th 40 (2020).................................................................18

*Trump v Mazars*,
    591 U.S. 848 (2020).............................................................................9

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022).............................................................26

*United States v. Golden Valley Elec. Ass'n*,
    689 F.3d 1108 (9th Cir. 2012) .......................................................... 15, 16

*United States v. Kis*,
658 F.2d 526 (7th Cir. 1981) ...............................................................22

*United States v. Markwood*,
48 F.3d 969 (6th Cir. 1995) ................................................................21

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ................................................. 5, 8, 9, 10, 11, 12, 14, 15, 17

*Univ. of Med. & Dentistry of N.J. v. Corrigan*,
347 F.3d 57 (3d Cir. 2003) ............................................... 17, 18, 20, 22

*Univ. of Pa. v. E.E.O.C.*,
493 U.S. 182 (1990) ............................................................................10

*Winter v. Cal. Med. Rev., Inc.*,
900 F.2d 1322 (9th Cir. 1989) ............................................... 19, 20, 23

*Worldwide Church of God v. McNair*,
805 F.2d 888 (9th Cir. 1986) ..............................................................23

## **<u>Statutes</u>**

Cal Gov't Code § 11184 ........................................................................13

Cal. Bus. & Prof. Code § 16759 ........................................................9, 23

Cal. Bus. & Prof. Code § 17204 ............................................................8

Cal. Civ. Code § 3480 ............................................................................7

Cal. Gov't Code § 11187 ............................................................ 13, 14, 23

Cal. Gov't Code § 25170 ........................................................................9

## INTERESTS OF AMICI CURIAE[1]

Amici Curiae are local jurisdictions, officials, and government organizations from around the country that collectively represent and serve millions of residents.[2] Amici bear responsibility for protecting the health, safety, and welfare of the residents and communities they serve. To do so, amici exercise discretion and independent judgment about how best to use their powers. Despite the diversity of their priorities, resources, and policies, all amici have in common a compelling interest to ensure their actions are well-informed, responsive to their communities, and reasonably likely to achieve their intended ends. To achieve this interest, amici can issue subpoenas to obtain information relevant to their decision making.

---

[1] This brief is filed with the consent of all parties and pursuant to FRAP 29 and Ninth Circuit Rule 29-3. No party's counsel authored the brief in whole or in part or contributed money intended to fund the preparation or submission of the brief. No person, other than amici curiae, their members, or their counsel, contributed money intended to fund the preparation or submission of the brief.

[2] Amici are the City Attorney for the City of San Diego, California; the City of Chicago, Illinois; the City of New York, New York; the City of Sacramento, California; the International Municipality Lawyers Association (IMLA); and the League of California Cities (Cal Cities).

IMLA is an advocate and resource for local government attorneys since 1935. Owned solely by its more than 3,000 members, IMLA serves as an international clearinghouse for legal information and cooperation on municipal matters.

Cal Cities is an association of 475 California cities dedicated to protecting and restoring local control to provide for the public health, safety, and welfare of their residents, and to enhance the quality of life for all Californians. Cal Cities is advised by its Legal Advocacy Committee, comprised of 25 city attorneys from all regions of the State. The Committee monitors litigation of concern to municipalities and identifies those cases that have statewide or nationwide significance. The Committee has identified this case as having such significance.

These subpoenas, typically in the form of administrative subpoenas, are not self-enforcing and permit the government to access a wide range of information by directing inquiries to people and organizations with knowledge relevant to the issue under consideration. In some instances, officials may be authorized to serve subpoenas in connection with an investigation into potential violations of laws or policies. In other instances, legislative bodies may be authorized to conduct investigations in order to legislate wise and effective laws. More broadly, many agencies and officials can conduct investigations on all manner of issues within their subject matter jurisdiction. The common thread in all these inquiries is that *the government has the right to ask questions*, and in fact must do so to ensure it is responsibly carrying out its duty to protect its residents and communities. Thus, a subpoena is a critical and well-established tool of modern governance, and amici share a common interest in ensuring that it is not sapped of its utility.

Amici, however, take no position on the merits of the theory the City Attorney for the City and County of San Francisco (San Francisco) is investigating into the legality of U.S. News & World Report, L.P.'s (U.S. News) business practices. Rather, amici write to: (1) underscore and give context to the important role that administrative subpoenas play in governance; and (2) illustrate how U.S. News's request on appeal would threaten to undermine the ability and willingness

of amici to exercise their lawful authority to conduct investigations via subpoenas into suspected wrongful activities.

## SUMMARY OF ARGUMENT

This case implicates a bedrock principle of governance: Governments possess the ability to access relevant information in order to govern wisely and serve their communities effectively. They have long been understood to have an inherent "power of inquiry" attendant to their powers to legislate and enforce laws. In the modern era, this "power of inquiry" is embodied in the form of a subpoena seeking information relevant to their decision making. For agencies and officials charged with civil enforcement of the laws, this takes the form of an administrative subpoena, also known as an investigative subpoena. The government relies on subpoenas to access information about matters of public concern.

Significantly, government agencies' broad latitude to issue administrative subpoenas exists within a well-established framework that ensures appropriate oversight by courts. Agencies and officials can *issue* administrative subpoenas, but they cannot *enforce* them by threat of contempt or other punishment. Rather, constitutional principles require that the subpoena-enforcement power belong exclusively to the courts — and only after recipients are given due process including the opportunity to object. A person or business who has been served with a subpoena cannot be held in contempt or otherwise punished for noncompliance

unless and until a court has determined the subpoena is valid, not overbroad, does not intrude on constitutionally protected privileges, and has ordered the respondent to comply within a reasonable period of time. And in keeping with our federalist structure, state courts scrutinize subpoenas issued by state and local agencies while federal courts do so for administrative subpoenas issued by federal agencies.

Here, U.S. News could not be subjected to any penalty for refusing to respond to the subpoenas issued by San Francisco *unless and until* (1) U.S. News exercised its rights under state law to object to the subpoenas; (2) state courts subsequently considered and rejected U.S. News's objections, held that the subpoenas were valid, and ordered U.S. News to comply with them; and (3) U.S. News thereafter continued to refuse to comply with the subpoenas despite court orders directing it to do so.  None of these have happened.

Every state has different rules for how and when these safeguards are employed, and in California, as elsewhere, the framework is well-established by decades of case law applying clear statutory and constitutional protections. California law affords substantial deference to agencies; in the normal course, it calls for the enforcement of subpoenas if they meet the minimal requirements of (1) seeking information within the subject matter jurisdiction of the issuing agency, (2) describing demands that are not too indefinite, and (3) seeking information that is reasonably relevant to the investigation.  *See generally Brovelli v. Superior Ct. of*

*Los Angeles Cnty.*, 56 Cal. 2d 524, 529 (1961) (applying similar requirements as *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 213 (1946), and *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950)).  Also, the framework calls for greater scrutiny when enforcement of the subpoena could infringe on constitutional rights.  *See, e.g.*, *Lewis v. Superior Ct.*, 3 Cal. 5th 561, 575-577 (2017).

In no case, however, can courts demand that the agency issuing a subpoena prove the merits of its theory.  To the contrary, an agency "does not depend on a case or controversy for power to get evidence[.]"  *Morton Salt*, 338 U.S. at 642.  The purpose of a subpoena is to obtain evidence and inform decision making, *not* to prove a pending charge or theory.  In other words, "an administrative investigation adjudicates no legal rights." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (citing *Hannah v. Larche*, 363 U.S. 420, 440-43 (1960)).

By filing this action in district court when it did, U.S. News attempts to short-circuit an entire legal framework.  It ignores the state law under which San Francisco issued its subpoenas and the investigatory latitude that agencies have to get information necessary for wise decision making.  U.S. News also elides a key distinction between an *investigation* and a *prosecution*, the highly uncertain path to the latter, and the flexibility San Francisco retains to determine *after* conducting its investigation whether to pursue civil enforcement — and, if so, to what extent and on what grounds.  Nor does U.S. News acknowledge it has two existing options

under state law to contest the validity of the subpoenas at issue, having availed itself of neither. Instead, U.S. News asks this Court to reverse the entire order of the district court and remand to enjoin San Francisco from enforcing subpoenas that state law both authorizes and subjects to judicial safeguards. But doing so would threaten government's investigatory power to issue administrative subpoenas and the smooth functioning of well-established laws to enforce them.

If this Court countenances actions like this one, it will encourage investigation targets to use litigation as a tactic in the hope that the costs and delays associated with pre-enforcement litigation will deter agencies from lawful investigations into suspected wrongdoing by well-resourced corporate actors. The result could be to paralyze agencies and weaken their civil enforcement powers. At the same time, it diverts precious and scarce resources from government efforts to engage in efficient, prompt, and informed decision making. It also inhibits investigations to vindicate the common good and, by increasing the costs, it discourages agencies from even initiating investigations. And above all, by demanding that government attend to meritless, premature litigation rather than follow existing laws to protect public health and welfare, it results in harm to the public. Accordingly, the district court's decision to dismiss U.S. News's challenge to San Francisco's subpoenas should be affirmed in the public interest.

## ARGUMENT

**I.     The Power to Issue Administrative Subpoenas Facilitates Responsible and Informed Governmental Decision Making**

**A.     Local Governments Rely on the Subpoena Power to Protect the Health, Safety, and Welfare of the Communities They Serve**

In our constitutional system of limited federal power, local and state governments bear primary responsibility for protecting the health and safety of their residents.  *E.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (residents' "health and safety" are "primarily, and historically, …matter[s] of local concern," and "States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons" (internal citations and quotations omitted)).  Local and state governments must protect not only individual residents, but also their community as a whole.  *E.g.*, *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1102 (1997).

To fulfill this fundamental responsibility, the law has long given local and state governments tools to investigate potential violations of law and to decide when and how to bring enforcement actions based on what those investigations reveal.  For example, in California, as in most states, localities and the State have the power to enjoin and abate public nuisances, which for centuries have been understood as "offenses against, or interferences with, the exercise of rights common to the public."  *Acuna*, 14 Cal. 4th at 1102; *see also* Cal. Civ. Code § 3480.

Similarly, the State and certain local officials are authorized to bring suit to enjoin and obtain monetary penalties for any unfair, unlawful, or deceptive business practice. Cal. Bus. & Prof. Code § 17204. Many other states also have consumer-protection statutes. And in addition to these specific enforcement mechanisms, local and state governments provide services and implement and enforce laws through various agencies, departments, and officials, each of which is tasked with ensuring compliance with the laws within their purview.

By common sense, tradition, and governing law, it is clear that government must have access to relevant information if it is to exercise its powers in an informed and responsible manner. In other words, the government must (and does) have the ability to investigate. *E.g.*, *Connecticut Indem. Co. v. Superior Ct.*, 23 Cal. 4th 807, 813 (2000) ("It long has been recognized that a legislative body may conduct an investigation in order to assist its decisionmaking[.]")

A primary investigatory tool to obtain this information is an administrative subpoena. Through administrative subpoenas, government exercises the "power to get information from those who best can give it and who are most interested in not doing so." *Morton Salt*, 338 U.S. at 642. All states, and many local governments, can issue subpoenas that command the production of documents or testimony. In California, for example, administrative subpoena power is considered both inherent within government's "structural and operational" powers and also "reasonably

necessary to the full accomplishment" of government's legitimate goals. *Dibb v. Cnty. of San Diego*, 8 Cal. 4th 1200, 1208-1216 (1994) (administrative subpoena power is one of "[t]he powers and duties of governing bodies and all other county officers"); *City of Vacaville v. Pitamber*, 124 Cal. App. 4th 739, 748-749 (2004) (city council's subpoena power includes the authority to grant mayor power to issue and seek enforcement of administrative subpoena on matter related to compliance with city ordinances); *see also*, *e.g.*, Cal. Gov't Code § 25170 (granting subpoena power to county boards of supervisors); *id.* § 37104 (granting subpoena power to city councils); Cal. Bus. & Prof. Code § 16759(b) (empowering specified local public prosecutors to issue subpoenas with respect to investigations of suspected violations of the California Unfair Competition Law).

The use of administrative subpoenas at the state and local level has parallels at the federal level. The U.S. Supreme Court has recognized that Congress has the "broad and indispensable" "power of inquiry — with process to enforce it — [as] an essential and appropriate auxiliary to the legislative function," lest it otherwise "be shooting in the dark, unable to legislate 'wisely or effectively.'" *Trump v Mazars*, 591 U.S. 848, 862 (2020). In turn, Congress has empowered almost all federal agencies to issue administrative subpoenas as part of their civil investigatory authority. *See Morton Salt*, 338 U.S. at 643 ("When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may

take steps to inform itself as to whether there is probable violation of the law.").

As the economic, social, and administrative order has grown more complex, so too has the need for government to quickly become well informed in order to balance communities' many competing interests. For amici and other local and state governments around the country, the administrative subpoena is an indispensable tool to conduct fact-gathering investigations. These subpoenas are one of government's "traditional investigative practices," and "are used for investigatory purposes by state and federal grand juries, state and federal administrative agencies, and state and federal legislative bodies." *Carpenter v. United States*, 585 U.S. 296, 331 (2018) (Kennedy, J., dissenting) (internal citations omitted). Information obtained through subpoenas enables informed governmental decision making. Accordingly, courts also recognize that agencies must have broad latitude to investigate matters within their purview. *See, e.g.*, *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017) ("In order '[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process,' Title VII 'confers a broad right of access to relevant evidence,'" including the power to issue administrative subpoenas (citing *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 191 (1990)); *accord Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975) (enforcement of appropriate administrative subpoenas is "the very backbone of an administrative agency's effectiveness in carrying out [its] mandated duties").

For the same reasons, it is undisputed that government agencies can conduct investigations without establishing probable cause to believe a target of investigation has violated the law, as would be required to serve a warrant, and without having to file a civil enforcement action claiming that the target has committed wrongdoing. Under both California and federal law, "[t]he very purpose of [a] subpoena … is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one *if, in the [agency's] judgment*, the facts thus discovered should justify doing so." *Okla. Press*, 327 U.S. at 201 (emphasis added); *accord Morton Salt*, 338 U.S. at 643 (an agency "may take steps to inform itself as to whether there is probable violation of the law"); *Craib v. Bulmash*, 49 Cal. 3d 475, 481-84 (1989). An agency's "power to make administrative inquiry . . . does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated.'" *Brovelli*, 56 Cal. 2d at 529 (quoting *Morton Salt*, 338 U.S. at 642-43). Instead, agencies can issue subpoenas without any "formal accusation [] on file or a formal adjudicative hearing [] pending." *Arnett v. Dal Cielo*, 14 Cal. 4th 4, 8 (1996). This is because "[t]here is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him." *Brovelli*, 56 Cal. 2d at

529.  The Supreme Court has been crystal clear that an agency "does not depend on a case or controversy for power to get evidence." *Morton Salt*, 338 U.S. at 642.

### B.  Judicial Review of Administrative Subpoenas Is Necessary, Limited, and Summary

Government's power to obtain information by administrative subpoena is subject to well-established judicial oversight.  Judicial review is a constitutional prerequisite to enforce administrative subpoenas, precisely so that courts can protect individual liberties and constrain overbroad inquiries.  In California, as in other states and the federal system, the legal framework for judicial review of administrative subpoenas carefully balances governmental interests with subpoena respondents' rights.  The framework recognizes and facilitates the government's interest in efficient and effective factfinding and its broad latitude to conduct investigations without first initiating civil prosecutions, but it also enforces subpoena respondents' rights against unreasonable requests as well as rights or privileges they may have against disclosing subpoenaed information.

If and when U.S. News avails itself of the options available to it under state law to object to San Francisco's subpoenas, U.S. News will be entitled to state court oversight and review pursuant to this framework — and it will have an opportunity to have a court determine the validity of its objections *before* it could ever be compelled to respond to the subpoenas.  *See Cal. Rest. Ass'n v. Henning*, 173 Cal. App. 3d 1069, 1076 (1985).  As the district court made clear in its order,

U.S. News "faces no automatic penalties for objecting to the Subpoenas or failing to respond to them." 1-ER-5. Rather, the "validity of the objection [to the Subpoenas] shall be determined exclusively in a proceeding brought . . . to compel compliance." 1-ER-6; Cal. Gov't Code § 11187(d). Accordingly, there is no merit to U.S. News's contention that the subpoenas put U.S. News to a "Hobson's choice" of "provid[ing] the requested documents and information" or "bear[ing] the penalties of noncompliance with the Subpoenas." Appellant's Br. 25.

### 1. Subpoena Respondents Are Entitled to Judicial Review Before Enforcement

The constitution requires courts to assess the validity of an administrative subpoena, and to consider a subpoenaed respondent's objections, before ordering the respondent's compliance under threat of contempt or other penalty.

Generally, in California, "it is not constitutionally permissible to place under penalty of criminal conviction the subpoenaed party who has refused in good faith to comply unless and until the subpoena's validity has been first judicially established." *Henning*, 173 Cal. App. 3d at 1077. The courts make clear that, "unless the Constitution expressly or by necessary implication provides otherwise, only a court may adjudicate and punish contempt." *Dibb*, 8 Cal. 4th at 1217.[3]

---

[3] This requirement is reflected in statutory law as well. For example, the California Legislature has directed that state department heads must exercise their administrative subpoena powers "in a manner consistent with the California Constitution and the United States Constitution." Cal. Gov't Code § 11184(a).

The same is true for federal courts assessing federal agencies' administrative subpoenas. It is well-settled that although "the demand to inspect may be issued by the agency" via an administrative subpoena, "the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *See v. City of Seattle*, 387 U.S. 541, 544-45 (1967); *accord Donaldson v. United States*, 400 U.S. 517, 525 (1971) ("the summons is administratively issued but its enforcement is only by federal court authority in 'an adversary proceeding' affording the opportunity for challenge."); *see City of Los Angeles, Cal. v. Patel*, 576 U.S. 409, 420 (2015); *Morton Salt*, 338 U.S. at 643.

While U.S. News asserts on appeal that noncompliance with the subpoenas would "expressly trigger" contempt or other penalties and suffer alleged injury, this is simply wrong. Appellant's Br. 12. These subpoenas are not self-executing, posing no real threat or imminent injury to U.S. News even if it objects or fails to respond. If U.S. News were to refuse to comply with the subpoenas and San Francisco were to decide to enforce them, "an entire set of legal procedures would be set in motion." 1-ER-21. These procedures allow U.S. News to object or not respond to the subpoenas and San Francisco to file a petition in state court to enforce them, after which U.S. News is afforded due process to "raise all available defenses and objections[.]" *Id.*; Cal. Gov. Code §§ 11187-11188. As the district court correctly pointed out, there is an "obvious difference" between participating in these

procedures and a "threat of immediate criminal prosecution for violating a law" — and "[t]here is no prosecution in the offing here." 1-ER-21. U.S. News's alleged injury is speculative and hypothetical, and therefore unfounded.

### 2. Judicial Review of Subpoenas is Generally Limited

The exercise of judicial oversight over administrative subpoenas is subject to a well-established body of law, whereby the court's role is straightforward and limited. When reviewing the validity of subpoenas, California courts must afford "considerable" "deference to administrative discretion and expertise" and apply a "general policy of noninterference." *Henning*, 173 Cal. App. 3d at 1075 (citing *Morton Salt*, 338 U.S. at 652-53). The requirements under California law for assessing the validity of subpoenas are: 1) "the inquiry [is] one which the agency demanding production is authorized to make," 2) "the demand [is] not too indefinite," and 3) "the information sought [is] reasonably relevant." *Brovelli*, 56 Cal. 2d at 525; *accord City & Cnty. of San Francisco v. Uber Techs., Inc.*, 248 Cal. Rptr. 3d 273, 280 (Cal. Ct. App. 2019). California's requirements mirror federal law, which requires that a subpoena be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (quoting *See*, 387 U.S. at 544); *accord United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012), *abrogated on other grounds by McLane*, 581 U.S. at 85

(appeals of decisions to enforce subpoenas are reviewed for abuse of discretion, not *de novo*). So long as a subpoena satisfies "these rather minimal limitations," it will survive judicial review for reasonableness. *See*, 387 U.S. at 545.[4]

As a corollary, neither state nor federal law permits a court to demand that an agency "prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct an investigation." *Uber*, 248 Cal. Rptr. 3d at 283; *accord McLane*, 581 U.S. at 76 (federal courts considering enforcement of subpoenas must not "use an enforcement proceeding as an opportunity to test the strength of the underlying complaint"); *Golden Valley Elec. Ass'n*, 689 F.3d at 1113 ("The scope of judicial review in an administrative subpoena enforcement proceeding is quite narrow." (internal quotation and citation omitted)).

## C. Limited Judicial Review of Subpoenas Advances Important Governmental Interests Without Sacrificing Individual Liberties

Judicial deference for administrative subpoenas is vital for two reasons.

*First*, the subpoena is a tool to facilitate a civil investigation, which is not an accusation of wrongdoing; rather, its purpose is to ensure government decisions (including those related to potential enforcement) are well informed. Agencies can investigate by obtaining "information from those who best can give it and who are

---

[4] Other states' laws are also consistent with these principles. *See, e.g., Meta Platforms, Inc. v. D.C.,* 301 A.3d 740, 756 (D.C. 2023); *Burns v. Arizona Pub. Serv. Co.,* 517 P.3d 624, 629 (Ariz. 2022); *Exxon Mobil Corp. v. Att'y Gen.,* 94 N.E.3d 786, 799 (Mass. 2018); *Parkhouse v. Stringer*, 912 N.E.2d 48 (N.Y. 2009).

most interested in not doing so." *Morton Salt*, 338 U.S. at 642; *see Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 782, 784 (9th Cir. 2000). And "'[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action.'" *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (quoting *Assoc. of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000)); *Uber*, 248 Cal. Rptr. 3d at 283. It goes without saying that investigations are separate from, and antecedent to, enforcement actions. In fact, "the possibility that no enforcement action may be taken is real for several reasons, not least of which is that the [agency] may change [its] mind." *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 69. For this reason, "an administrative investigation adjudicates no legal rights," *Jerry T. O'Brien, Inc.*, 467 U.S. at 742 (citing *Hannah*, 363 U.S. at 440-43), so targets of investigation do not have the sort of adjudicatory due process rights attendant to civil prosecutions, *Hannah*, 363 U.S. at 440-43.[5] Accordingly, review of a subpoena's validity is far too early a stage for courts to assess objections that an investigation target may have about the merits of a potential, hypothetical enforcement action.

---

[5] In certain circumstances where subpoena respondents claim entitlement to refuse to disclose information, courts may make allowances to address their claim at the investigation phase. For example, this may arise when agencies investigating medical providers subpoena patient medical files subject to the state constitutional right to privacy. Protective orders sometimes adequately protect privacy interests, and at other times courts may limit or quash subpoenas. *E.g., Kirchmeyer v. Helios Psychiatry Inc.*, 89 Cal. App. 5th 352, 359-60 (2023).

*Second*, agencies and officials must (and do) have broad latitude to conduct investigations through subpoenas in order to gather information relevant to their decision making within their subject matter jurisdiction. They do so in the public interest; therefore, any limits must in the normal course be minimal for agencies and officials to effectively discharge their duties to investigate and enforce. *See Okla. Press*, 327 U.S. at 213; *accord Henning*, 173 Cal. App. 3d at 1076. So long as they establish that the information requested is relevant to their investigation, which "need only [] be defined in general terms," courts must give them "a wide berth." *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997); *see McLane*, 581 U.S. at 84; *State Water Res. Control Bd. v. Baldwin & Sons, Inc.*, 45 Cal. App. 5th 40, 61 (2020) ("[A] subpoena is proper even when it is designed to produce material concerning a defense that may never arise; the focus is on relevancy to the investigation[.]") (quoting and agreeing with *NLRB v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996)).

For these reasons, courts assessing the validity of subpoenas routinely rebuff as premature subpoena respondents' arguments about the merits or legal contours of enforcement actions that agencies may file at the conclusion of an investigation. An obvious problem with "[j]udicial intervention into the agency process" at the investigation stage is that it "denies the agency an opportunity to correct its own mistakes and to apply its expertise." *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at

69.  Moreover, analysis of the merits of a subpoena respondent's defenses to a

hypothetical future enforcement action is "premature, as the controversy lacks, and

would benefit from, a concrete factual context." *CBA Pharma, Inc. v. Perry*, No.

22-5358, 2023 WL 129240, at *4 (6th Cir. Jan. 9, 2023); *accord Winter v. Cal.

Med. Rev., Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989) (at the investigation phase, an

agency's preliminary investigative finding is nonfinal; as such, courts cannot assess

claims of injury based on potential future enforcement actions because they require

that "a series of contingent events must occur to produce an injury").

A case in point is *City and County of San Francisco v. Uber Technologies*.

There, San Francisco subpoenaed Uber for information relevant to its investigation

into possible violations of state and local laws.  248 Cal. Rptr. 3d at 279-282.  Uber

resisted the subpoenas in state court, arguing preemption and the court's lack of

jurisdiction. *Id*. After the court disagreed, finding the subpoenas to be valid and

directing them to comply with the subpoenas, Uber appealed. But the appeals court

also rejected Uber's argument, declaring it was "'way too early'" to contend that

the subpoenas are a "'collateral attack on something that the [California Public

Utilities Commission] has asserted jurisdiction over.'" *Id*. at 281-283. Noting that

Uber posed a question of a "hypothetical conflict" that may never arise, the appeals

court explained that San Francisco is "far from seeking a finding of liability against

Uber — it is at the preliminary investigatory stage in which it seeks to determine if

any violations of [] law have occurred and, if so, whether it [can] seek redress[.]" *Id*. at 283. In turn, the appeals court affirmed the lower court's order and made clear that San Francisco "need not prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas" and investigate. *Id*.

Other courts assessing administrative subpoenas reach the same conclusion when faced with arguments about the merits of a hypothetical future enforcement action. *See, e.g.*, *CBA Pharma, Inc.*, 2023 WL 129240, at *4; *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 69; *Ass'n of Am. Med. Colls.*, 217 F.3d at 781-82 (at the subpoena-enforcement stage, rejecting as premature the assertion that civil investigation may lead to enforcement); *Winter*, 900 F.2d at 1325; *Casey v. FTC*, 578 F.2d 793, 798 (9th Cir. 1978) (affirming district court order enforcing FTC subpoena, and refusing to "reach the issue" of whether eventual prosecution, if any, would be unconstitutional "because the mere possibility of prosecution here does not constitute a case or controversy sufficient to render the issue justiciable").

And for similar reasons, the district court appropriately dismissed this case. Its reasoning comports with decades of case law that recognize important governmental interests to conduct investigations via subpoenas when addressing arguments that speculate on hypothetical future enforcement actions. Notably, the court reasoned that the "speculative nature of U.S. News's claims makes them unfit for judicial decision," concluding they "aim[] to extract an advisory opinion." 1-ER-26-27. And

yet again, that is exactly what U.S. News aims to do with this Court.

## II.    This Court Should Affirm Because Premature Federal Court Actions Bypass Applicable Legal Frameworks And Undermine Subpoena Power

The deference and narrowness that characterize the subpoena-enforcement case law enable two vital aspects of governmental factfinding — efficiency and flexibility — that are undermined when subpoena respondents like U.S. News bypass established state-court processes to challenge investigative subpoenas.

### A.    Government and the Public Have a Strong Interest in Efficiency and Flexibility when Conducting Investigations

Governments need to make timely decisions to address matters of social, political, or economic import to the communities they serve, and they should do so using as few public resources as necessary.  These resources take several forms, chief among them money, time, and human capital.  For investigations especially, the governmental interest in efficient and prompt factfinding and decision making calls for subpoena-enforcement procedures that are swift and summary.

Courts often recognize the importance of this interest, stressing the need to "narrow" the scope of issues which may be litigated in court for the "expeditious investigation of possible unlawful activity." *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977)). They also recognize that, typically, "proceedings are appropriate only after the investigation has led to enforcement, because '[j]udicial supervision of agency

decisions to investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process.'" *Univ. of Med. & Dentistry of N.J.*, 347 F.3d at 64 (quoting *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 127 n.12 (3d Cir. 1981)). It follows that courts should not tolerate delay at the investigatory subpoena stage but for "the most unusual circumstances." *In re EEOC*, 709 F.2d 392, 398 (5th Cir. 1983); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981) (stressing that summons enforcement actions are "intended to be summary" to advance investigations), *abrogated on other grounds by Church of Scientology of California v. United States*, 506 U.S. 9 (1992); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980) (rejecting request to stay subpoena-enforcement proceeding, in part on the ground that "the SEC must often act quickly, lest the false or incomplete statements of corporations mislead investors and infect the markets"); *Port of Seattle*, 521 F.2d at 433. Accordingly, governmental interest in efficient and expeditious investigations is plainly and widely recognized.

### B.  U.S. News's Premature Action Frustrates Governmental Interest

This action illustrates how ancillary proceedings outside the applicable legal framework disrupt, frustrate, and delay the investigation. San Francisco has neither sought to enforce its subpoenas, nor brought an enforcement action. By necessity,

U.S. News's claims are based on speculation about contingent future events.

To be clear, after U.S. News received the subpoenas at issue, California law offered two paths forward. First, U.S. News could refuse to respond; nothing requires them to state its objections at this stage. Cal. Gov't Code § 11187(a), (d). San Francisco would then need to petition the Superior Court to enforce the subpoenas, at which point U.S. News could object and ask the court to limit or invalidate them. *Id*.; Cal. Bus. & Prof. Code § 16759(b). Second, U.S. News could have gone on offense by serving objections to the subpoenas, meeting and conferring with San Francisco, and then, absent agreement, petition the court to quash or modify the subpoenas. Cal. Bus. & Prof. Code § 16759(d).[6]

Strikingly, U.S. News's papers omit any reference to the state law subpoena-enforcement framework that applies to its objections, let alone its two options in state court. Instead, U.S. News asks this Court to speculate about "outcomes [that] turn on contingencies which the court is ill-equipped to predict." *Ass'n of Am. Med. Colls.*, 217 F.3d at 782. Because the subpoenas are part of an investigation, San Francisco's "conclusions could change." *Id.* at 781 (citing *Winter*, 900 F.2d at 1325-26). Indeed, after reviewing U.S. News's information, San Francisco could

---

[6] There is no doubt that California courts will competently apply federal constitutional law if U.S. News avails itself of either option available to it. *See, e.g., Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986) ("state courts are as competent as federal courts to decide federal constitutional issues").

decide not to prosecute. But instead of participating in the procedures established by California law, U.S. News seeks reversal of the lower court's order — and for this Court to render an advisory opinion — even though a series of contingencies would need to occur before its claims could be fit for judicial resolution.

And the district court correctly explained in its decision why the speculative nature of U.S. News's claims render them constitutionally and prudentially unripe for review. 1-ER-8-27. First, U.S. News offered no evidence of injury, nor did it claim "it has changed, or will change, its behavior to adjust to [San Francisco]'s subpoenas. Quite the opposite: U.S. News has confirmed that it will continue to rank hospitals and to stand behind its journalism." 1-ER-23. Nothing prevents U.S. News from engaging in the speech it claims the subpoenas seek to chill. Second, the non-self-executing subpoenas at issue do not mandate immediate compliance because their finality depends on the outcome of future state court proceedings. 1-ER-25; *see Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (noting the ripeness requirement prevents courts "from entangling themselves in abstract disagreements" in "premature adjudication"). And third, any allegation of irreparable hardship is unwarranted at this juncture because San Francisco has not even enforced the subpoenas in state court. From a public interest perspective, U.S. News's action and appeal waste precious court time and resources.

Beyond wasting judicial resources, premature and unmeritorious actions like

U.S. News's threaten to undermine governments' ability to use subpoenas to obtain relevant information and make informed decisions. Each of these lawsuits and subsequent appeals requires an agency to divert resources from investigations, slows down its factfinding, and drives up the cost — in time, money, and attorney hours — to investigate and prosecute violations of laws that protect the health and welfare of communities. For example, this case has caused San Francisco to dedicate its resources to defending against U.S. News's misdirected claims. Already, the result has prevented state courts from assessing the validity of the subpoenas and diverted some of San Francisco's resources from investigating potential violations of the laws it must enforce. Further delays prejudice their efforts to gather relevant information before documents are lost and witness memory fades. And such delay also means the applicable statute of limitations may cover less relevant conduct if San Francisco ultimately decides to initiate a civil enforcement action.

The U.S. Supreme Court has repeatedly warned against permitting targets of investigation to initiate litigation for the purpose or with the effect of undermining the agency's investigative efforts. Targets, the Supreme Court explained, must not be permitted to litigate for the purpose of "further delay[ing] disclosure" or giving themselves the time or opportunity to "destroy or alter documents [or] intimidate witnesses." *Jerry T. O'Brien, Inc.*, 467 U.S. at 750-51; *see also Jerry T. O'Brien, Inc. v. SEC*, 719 F.2d 300 (9th Cir. 1983) (Kennedy, J., dissenting from denial of

rehearing *en banc*) (expressing concern that wrongdoers will "be provided a new instrument of obstruction or delay" to threaten government investigations).

Particularly when viewed in light of these warnings, it bears underscoring that U.S. News's action is not a one-off aberration. In *Twitter, Inc. v. Paxton*, the Ninth Circuit held conclusively in similar circumstances that federal courts have no subject-matter jurisdiction to consider a pre-enforcement challenge to a state official's subpoena because its mere issuance does not expose the recipient to "any penalties for its refusal to comply." 56 F.4th 1170, 1176 (9th Cir. 2022); *accord Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016). They reasoned that the threat of possible future compliance with non-self-enforcing investigative demands is vague and speculative. *Id*. As in *Twitter*, U.S. News's claims are virtually identical because its alleged injury is contingent on the outcome of a potential future action to enforce the subpoenas. Appellee's Br. 10; 14. And U.S. News's efforts to distinguish *Twitter* lack merit, as San Francisco argues in its papers. *Id*. at 17. Relying on *Twitter*, the district court appropriately made a similar finding in the instant case.

Yet despite *Twitter*, U.S. News and other targets of agencies' subpoenas have brought pre-enforcement challenges in district courts within the Ninth Circuit, claiming that courts have jurisdiction even without any government action to enforce subpoenas. *E.g. Second Amend. Found. v. Ferguson*, No. 23-1554, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024), *appeal filed*, No. 24-760 (9th Cir. filed Feb.

8, 2024); *Obria Grp. Inc. v. Ferguson*, No. 23-6093 (W.D. Wash. filed Nov. 29, 2023). These actions prejudice government investigations now hung up in federal court. By affirming the district court's decision, this Court would put an end to their attempts at gamesmanship and promote efficiency for investigations.

## CONCLUSION

For these reasons, Amici urge this Court to affirm the district court's order.

Dated:        August 20, 2024        Respectfully submitted,

MARA W. ELLIOTT
City Attorney
MARK ANKCORN
Senior Chief Deputy City Attorney
JULIE RAU
Deputy City Attorney


By: /s/Julie Rau
       JULIE RAU
       Deputy City Attorney

*Attorneys for Amicus Curiae*
*Office of the San Diego City Attorney*

*Additional amici and counsel on next page*

# ADDITIONAL AMICI AND COUNSEL

Susana Alcala Wood
City Attorney of the City of Sacramento
915 I Street, Fourth Floor
Sacramento, California 95814
*Attorney for City of Sacramento, California*


Mary B. Richardson-Lowry
Corporation Counsel
City of Chicago
Department of Law
121 North LaSalle Street, Suite 600
Chicago, Illinois 60602
*Attorney for the City of Chicago, Ill.*


Muriel Goode-Trufant
Acting Corporation Counsel
100 Church Street
New York, NY 10007
*Attorney for the City of New York, New York*


Amanda K. Karras
Executive Director and General Counsel
51 Monroe Street, Suite 404
Rockville, Maryland 20850
*Attorney for the International Municipal
Lawyers Association*


Cal Cities
1400 K Street, Suite 400
Sacramento, CA 95814

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-2928

The undersigned attorney or self-represented party states the following:

☒ I am unaware of any related cases currently pending in this court.

☐ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated:  August 20, 2024

> MARA W. ELLIOTT
> City Attorney
> MARK ANKCORN
> Senior Chief Deputy City Attorney
> JULIE RAU
> Deputy City Attorney

> By: /s/Julie Rau
> JULIE RAU

> *Attorneys for Amicus Curiae*
> *Office of the San Diego City Attorney*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-2928

I am the attorney or self-represented party.

This brief contains 6589 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☒ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature /s/Julie Rau_____ Date 8/20/2024_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

AMICUS BRIEF OF LOCAL GOVERNMENTS,     30
LOCAL GOVERNMENT OFFICIALS, AND LOCAL
GOVERNMENT ORGANIZATIONS
CASE NO. 24-2928

## CERTIFICATE OF SERVICE

I, MIRIAM GRABLE, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS on August 20, 2024.

**BRIEF OF *AMICI CURIAE* LOCAL**
**GOVERNMENTS IN SUPPORT OF APPELLEE**

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate electronic filing system.

Executed August 20, 2024, at San Diego, California.

*/s/* Miriam Grable
MIRIAM GRABLE